IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAHARA DELAROSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UPMC HEALTH PLAN, INC.,<br><br>Defendant. | Case No.  24-cv-4098<br><br>(Removal from: The Supreme Court of the State of New York, County of Kings, Index No. 512678/2024 ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, and with full reservation of all defenses, Defendant UPMC Health Plan, Inc. ("UPMC Health Plan"), gives notice of the removal of this action originally filed in the Supreme Court of the State of New York, County of Kings, to the United States District Court for the Eastern District of New York. In support, UPMC Health Plan provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see Dart Cherokee Basis Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a).").

As set forth below, this case meets all of the requirements for original jurisdiction and removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), and is timely and properly removed by the filing of this Notice.

## NATURE OF REMOVED ACTION

1. On May 6, 2024, Plaintiff Sahara Delarosa filed the attached Complaint against UPMC Health Plan in the Supreme Court of the State of New York, County of Kings, individually and on behalf of a putative class ("Complaint"). *See* Complaint, *Delarosa v. UPMC Health Plan, Inc.*, Index No. 512678/2024 (N.Y. Sup Ct.), NYSCEF No. 1. (attached as **Exhibit A** (Complaint)).

2. The Complaint, with no specifics, alleges that actors gained unauthorized access to "Defendant's database," allegedly compromising Plaintiff's personal information. *Id.* ¶ 5. Plaintiff alleges two counts: (1) Negligence, *id.* ¶¶ 36–71; and (2) Breach of Fiduciary Duty, *id.* ¶¶ 72–78.

3. Plaintiff also proposes to represent a putative class of "[a]ll persons whose PII was accessed and/or exfiltrated during the Data Breach Incident." *Id.* ¶ 26.

4. UPMC Health Plan is a subsidiary of UPMC and a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Allegheny County at 600 Grant Street, Pittsburgh, 15219. UPMC Health Plan offers health insurance products and services to its members.

5. UPMC Health Plan disputes the facts and claims alleged in the Complaint and reserves all procedural, substantive, and other defenses, arguments, and claims available in response to the Complaint.

## BASIS FOR REMOVAL

**I.  Removal Of This Putative Class Action Is Proper Pursuant To The Class Action Fairness Act, 28 U.S.C. § 1332(d).**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). CAFA grants federal courts original jurisdiction over claims pleaded as proposed class actions whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," *id.* § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" not less than 100, *id.* § 1332(d)(5)(B); and (3) "the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs," *id.* § 1332(d)(2). The Supreme Court has emphasized that "CAFA's provisions should be read

broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart*, 574 U.S. at 89 (internal marks and citation omitted).

7. UPMC Health Plan denies that Plaintiff has defined a proper class, that class treatment is proper, and that any class could be certified in this action and reserves all rights to pursue these defenses to certification as necessary at the appropriate time. Nevertheless, this lawsuit as pleaded satisfies CAFA's definition of a "class action." Plaintiff captioned her pleading "individually and on behalf of all others similarly situated" as a "class action complaint," *see* Complaint at Cover, and seeks to represent a putative class in this litigation, *id.* ¶¶ 26–35. While not explicitly cited in the complaint, Plaintiff presumably brings this action under New York Civil Practice Law and Rules ("CPLR") 901 *et seq.*, which authorizes the filing of class action suits in state court and is New York's analog to Federal Rule of Civil Procedure 23. *See* 28 U.S.C. § 1332(d)(1)(B) ("[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.").

8. Venue in this Court is proper because the state court action is pending within the Eastern District of New York. *See* 28 U.S.C. § 1441(a).

**A.    The Parties Are Minimally Diverse.**

9. CAFA requires that the parties be only "minimally diverse." *Dart*, 574 U.S. at 84–85. Federal jurisdiction exists in this action if just one member of the putative class is "a citizen of a State different from [the] defendant." 28 U.S.C. § 1332(d)(2)(A); *see Carter v. Healthport Techs., LLC*, 822 F.3d 47, 59–60 (2d Cir. 2016) (CAFA's minimal diversity satisfied where there is "at least one party who is diverse in citizenship from one party on the other side of the case").

10. As a Pennsylvania nonprofit corporation with its headquarters and principal place of business in Pennsylvania, UPMC Health Plan is a citizen of Pennsylvania for purposes of determining jurisdiction. *Id.* § 1332(c)(1).

11. As alleged in the Complaint, Plaintiff is "a citizen and resident of Kings County, New York." Complaint ¶ 14.

12. Further, UPMC Health Plan serves members spread across a number of states.

13. Accordingly, CAFA's minimal diversity requirement is satisfied in this action.

**B.  Plaintiff Alleges A Putative Class Of More Than 100 Members.**

14. UPMC Health Plan denies that Plaintiff has defined a proper class, that class treatment is proper, and that any class could be certified in this action. Nevertheless, the putative class as pleaded facially meets CAFA's threshold of at least 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

15. In establishing federal jurisdiction under CAFA, a defendant is "entitled to rely on the allegations in [the Complaint]," including the alleged "putative class size." *Safranek v. USAA Cas. Ins. Co.*, 525 F. Supp. 3d 707, 722 (M.D. La. 2021); *see also Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014) (The Second Circuit "generally evaluate[s] jurisdictional facts . . . on the basis of the pleadings . . . .").

16. Plaintiff alleges that the Cybersecurity Incident purportedly giving rise to her claims "impacted at least 7,000 persons" and proposes a putative class of members "so numerous that joinder of all members is impracticable." Complaint ¶ 28; *see id.* ¶ 26.

17. The proposed class exceeds CAFA's threshold based on these allegations alone. 28 U.S.C. § 1332(d)(5)(B).

### C. The Complaint Places More Than $5 Million In Controversy.

18. UPMC Health Plan concedes neither liability on Plaintiff's claims nor the propriety of the relief she seeks, and reserves all rights with respect to all issues presented by the Complaint, including but not limited to venue, liability, causation, standing, damages, and class certification.

19. Nevertheless, for purposes of assessing the jurisdictional amount, what matters is solely the amount potentially in controversy as alleged in the Complaint and not whether a plaintiff's claims or alleged damages have any merit (which Plaintiff's do not). *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016) ("When assessing the jurisdictional amount, the Court considers the plaintiffs' allegations, not the likelihood of recovery.") (citing *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)). To be clear, UPMC Health Plan disputes that Plaintiff or any other member of the putative class has incurred any cognizable injury or measurable damages in any form.

20. The amount in controversy is determined by "adding up the value of the claim of each person who falls within the definition of [the] proposed class and determin[ing] whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). No evidence is necessary: A "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. And because the Complaint does not specify an exact amount sought, UPMC Health Plan's "amount-in-controversy allegation should be accepted." *Id.* at 87; *see also Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 358 (N.D.N.Y. 2023). In short, federal jurisdiction will exist in this action unless it is shown to "a legal certainty that the plaintiff could not recover the amount alleged . . . ." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 365 (S.D.N.Y. 2019).

21. Here, CAFA's $5 million amount-in-controversy requirement is satisfied on the face of the Complaint.

22. Plaintiff alleges a putative class of "at least 7,000 persons," but "potentially amounting to millions of individuals[]." Complaint ¶ 22, 28. And Plaintiff alleges that each of those putative class members "suffered and will suffer injury," including: (a) "theft of their PII"; (b) "costs associated with the detection and prevention of identity theft"; (c) "costs" from attempting to "ameliorate, mitigate, and deal with the consequences" of the Cybersecurity Incident; (d) "invasion of privacy"; (e) "emotional distress, stress, nuisance, and annoyance" from the Cybersecurity Incident; (f) actual or potential "fraud and identity theft"; (g) "damages to and diminution in value" of their personal information; and (h) "the continued risk to their PII" from further cyberattacks. *Id.* ¶ 12.

23. Plaintiff, accordingly, alleges that the "aggregate damages sustained by the Class are in the millions of dollars." *Id.* ¶ 34.

24. Further, Plaintiff also alleges entitlement to injunctive relief. *E.g.*, *id.* ¶ 1, 13, 71. Courts in the Second Circuit include the costs to the defendant of fulfilling a plaintiff's demand for injunctive relief in assessing whether the amount in controversy threshold has been met. When a plaintiff "seeks primarily equitable relief . . . the amount in controversy is measured 'by the value of the object of the litigation' to the plaintiff . . . [and] one method of measuring the value of such a fund to the plaintiff is by reference to the cost to the defendant." *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 152 (S.D.N.Y. 2001); *see also A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87–88 (2d Cir. 1991) ("Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the

6

impairment to be prevented by the injunction. In calculating that impairment, the court may look not only at past losses but also at potential harm.")

25. In particular, Plaintiff seeks injunctive relief requiring UPMC Health Plan to, *inter alia*: (1) protect and encrypt "all data collected through the course of its business;" (2) "delete, destroy, and purge" the personally identifying information of Plaintiff and class members; (3) implement a "comprehensive Information Security Program;" (4) prohibit use of cloud-based database for Plaintiff and class members' personally identifying information; (5) hire "independent third-party security auditors/penetration testers," as well as other security personnel; (6) engage third-party vendors and internal personnel to conduct "automated security monitoring; (7) train, test, and audit its security personnel regarding any new or updated procedures; (8) implement "firewalls and access controls" to segment network access to protect data; (9) conduct "regular database scanning and securing checks;" (10) establish an annual and periodic "information security training program" for all employees; (11) "routinely and continually conduct internal training and education" on incident response procedures; (12) stand up a "system of tests" to assess employees IT knowledge; (13) implement a "threat management program;" (14) "educate all Class members about the threats" of PII loss and identity theft; and (15) submit to, for a period of 10 years, a court-appointed assessor to conduct an annual attestation of compliance with the Court's judgment and orders. Complaint at Prayer for Relief.

26. Plaintiff alleges she and the class are entitled to this injunctive relief because they have "a continuing interest in ensuring that their information is and remains safe[.]" Complaint ¶ 13. In other words, Plaintiff claims that the requested injunctive relief will produce value to Plaintiff and represents an key "object of the litigation." *Rezulin*, 168 F. Supp. 2d at 152. Thus, the alleged costs to UPMC Health Plan of implementing the proposed additional cybersecurity

7

policies, procedures, and technologies (which UPMC Health Plan disputes are appropriate or necessary) should be considered when evaluating the amount in controversy. *See, e.g.*, *Steinberg v. Nationwide Mut. Ins. Co.*, 91 F. Supp. 2d 540, 544 (E.D.N.Y. 2000) (concluding that the defendants' costs of implementing the plaintiffs' sought-after injunctive relief was the appropriate measure of the amount in controversy).

27. Accordingly, based on Plaintiff's claims as pleaded, CAFA's amount in controversy of $5 million is satisfied in this action. *See Dart*, 574 U.S. at 87.

\* \* \* \* \* \*

28. This action, as described in more detail above, meets all the requirements of CAFA: (1) minimal diversity under 28 U.S.C. § 1332(d)(2)(A); (2) a putative class size of 100 or more members under 28 U.S.C. § 1332(d)(5)(B); and (3) an amount in controversy of more than $5 million under 28 U.S.C. § 1332(d)(2). This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1332(d).

## **COMPLIANCE WITH PROCEDURAL REQUIREMENTS**

29. UPMC Health Plan meets all other requirements for removal.

30. This Court has personal jurisdiction over all parties.

31. UPMC Health Plan has also satisfied all the procedural requirements for removal under 28 U.S.C. § 1446.

32. UPMC Health Plan files this Notice of Removal pursuant to 28 U.S.C. § 1441(a) in the United States District Court for the Eastern District of New York because the state court in which the action is pending, the Supreme Court for the State of New York, County of Kings, is within this federal judicial district.

33. This removal, within 30 days of Plaintiff filing the Complaint and any service of process, is timely under 28 U.S.C. § 1446(b). *See* Complaint; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999).

34. In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, UPMC Health Plan will "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Supreme Court for the State of New York, County of Kings.

35. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of UPMC Health Plan's right to assert any and all defenses or objections to the Complaint, including but not limited to Plaintiff's class allegations. Notably, pursuant to New York CPLR 2104, Plaintiff and UPMC Health Plan have agreed and stipulated, without waiver of and preserving all other rights and defenses of the parties, that UPMC Health Plan's time to answer or otherwise respond to the Complaint shall be extended to July 25, 2024. *See* **Ex. A** (Stipulation).

36. UPMC Health Plan reserves the right to amend this Notice of Removal. If there are any questions that arise as to the propriety of removal of this action, UPMC Health Plan respectfully reserves the right to submit briefing, argument, and additional evidence as necessary to support removal of this case.[1]

---

[1] Nothing in this Notice of Removal should be interpreted as substantially invoking the litigation process or as a waiver or relinquishment of UPMC Health Plan's right to assert any defense or affirmative matter, including but not limited to the defenses of: (1) lack of personal jurisdiction; (2) insufficiency of process; (3) insufficiency of service of process; (4) improper joinder of claims and/or parties; (5) failure to state a claim; (6) mandatory arbitrability of some or all of the claims; (7) failure to join indispensable parties; (8) lack of standing; or (9) any other pertinent defense available under Federal Rules of Civil Procedure 8 and 12, any state or federal statute, or otherwise.

Dated: June 7, 2024

Respectfully submitted,

*/s/ Kerianne Tobitsch*
Kerianne Tobitsch
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: 212.326.8321
ktobitsch@jonesday.com

Rebekah B. Kcehowski*
James T. Kitchen*
JONES DAY
500 Grant St., Suite 4500
Pittsburgh, PA 15219
T: (412) 391-3939
F: (412) 394-7959
rbkcehowski@jonesday.com
jkitchen@jonesday.com

*Counsel for UPMC Health Plan*
(* Pro Hac Vice forthcoming)

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Notice of Removal was served on the following on June 7, 2024, via email and first-class mail:

Rachel Edelsberg
Dapeer Law, P.A.
3331 Sunset Avenue
Ocean, NJ  07712
Telephone:  917.456.9603
rachel@dapeer.com

*/s/ Kerianne Tobitsch*
Kerianne Tobitsch
*Counsel for UPMC Health Plan*